# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENITA BRYANT,<br><br>　　　　　　　　　　　　Plaintiff,<br>vs.<br><br>COVENTRY HEALTH CARE, AGENT FOR FIRST HEALTH GROUP CORP., and DOES 1-30, inclusive,<br><br>　　　　　　　　　　　　Defendants. | CASE NO. 08cv1628 DMS (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Docket No. 15]** |

　　　　This matter comes before the Court on Defendant's motion for summary judgment. Plaintiff has filed an opposition to the motion, and Defendant has filed a reply. For the reasons discussed below, the Court grants in part and denies in part Defendant's motion.

## I.
## BACKGROUND

　　　　Plaintiff Renita Bryant is a "very tall, large, older black woman." (Pl.'s Separate Statement of Disputed Facts in Opp'n to Mot., Fact No. 86.) In 1989, she began working as a Hospital Service Representative for Community Care Network ("CCN"). (Def.'s Separate Statement of Uncontroverted Facts in Supp. of Mot., Fact No. 1.) CCN was acquired by First Health Group Corporation ("First Health") in 2001, which was subsequently acquired by Defendant Coventry Health Care ("Defendant" or "CHC") in January 2005. (*Id.*, Fact No. 2.)

///

1    Defendant's Employee Handbook includes sections on "Diversity Awareness and the
2 Workplace" and "Equal Employment Opportunity." (*See* Decl. of Jeanette M. Kang in Supp. of Mot.
3 ("Kang Decl."), Ex. A at 157-60.) It also states that employment is:

> "at will."  This means you have the right to terminate your employment with CHC, with or without reason and with or without notice, at any time.  CHC also has the right to terminate or lay off employees, with or without reason and with or without notice, at any time, too, except as prohibited by law.

(*Id.* at 178.)  This portion of the Handbook also goes on to say:

> No individual other than the Chief Executive Officer of CHC, Inc., has the authority to alter this arrangement, to enter into an agreement for employment for a specific time, or to make any agreement contrary to this policy.  Further, any such agreement must be in writing and signed by the Chief Executive Officer or his designee.

(*Id.*) Plaintiff acknowledged that she was notified of the Employee Handbook on June 28, 2005. (*Id.* at 133.)

Plaintiff's job duties at CCN and First Health involved customer service and sales. (Def.'s Separate Statement of Uncontroverted Facts in Supp. of Mot., Fact No. 3.)  After Defendant acquired First Health, Plaintiff transitioned into a position focused solely on sales.  (*Id.*, Fact No. 4.)  Plaintiff began working in this position in February 2005.  (*Id.*, Fact No. 19.)  Plaintiff's duties in this position included building and retaining relationships with existing customers as well as providing revenue forecasting, and identifying and pursuing new sales opportunities.  (*Id.*, Fact No. 20.)

Plaintiff's initial supervisor at CHC was Jonathan Wechsler.  (*Id.*, Fact No. 25.)  Ms. Wechsler completed a Competency Assessment Form for Plaintiff in 2006.  (Kang Decl., Ex. A at 99-101.)  His Overall Review Rating was that Plaintiff was performing successfully.  (*Id.* at 101.)

In February 2007, Lindsay DeYoung became Plaintiff's direct supervisor.  (Def.'s Separate Statement of Uncontroverted Facts in Supp. of Mot., Fact No. 31.)  This was DeYoung's first job supervising sales people.  (Pl.'s Separate Statement of Disputed Facts in Opp'n to Mot., Fact No. 34.)

In addition to supervising Plaintiff, DeYoung supervised Lori Meyer, who joined CHC in April 2007.  (Decl. of Paula S. Rosenstein in Opp'n to Mot.("Rosenstein Decl."), Ex. FF.)  Meyer is white and younger than Plaintiff.  (Pl.'s Separate Statement of Disputed Facts in Opp'n to Mot., Fact No. 75.)

1    Plaintiff's relationship with DeYoung was unremarkable until May 21, 2007. (Def.'s Separate Statement of Uncontroverted Facts in Supp. of Mot., Fact No. 32.) On that date, DeYoung first accompanied Plaintiff to a sales meeting. (Pl.'s Separate Statement of Disputed Facts in Opp'n to Mot., Fact No. 34.) After the meeting, DeYoung handed Plaintiff a Performance Improvement Plan ("PIP I"). (*Id.*, Fact No. 38.) PIP I listed nine performance issues on which Plaintiff needed improvement. (*See* Kang Decl., Ex. A at 102-04.) Plaintiff disputes the accuracy of the issues listed in PIP I, and filed a written response thereto on June 1, 2007. (*Id.*)

PIP I was scheduled to last from May 21, 2007, through July 20, 2007. (*Id.* at 102.) However, on July 11, 2007, PIP I was extended for an additional 60 days to September 21, 2007. (*Id.* at 105.) The extended PIP ("PIP II") reflects that Plaintiff had completed seven of the nine issues listed in PIP I. (*Id.* at 105-07.)

During the period of PIP II, DeYoung observed Plaintiff in two client pitch meetings. (Def.'s Separate Statement of Uncontroverted Facts in Supp. of Mot., Fact No. 62.) DeYoung was unhappy with Plaintiff's performance at those meetings, (*see* Decl. of Lindsay DeYoung ("DeYoung Decl.") at ¶ 9), and she told Plaintiff so in a phone call and an e-mail after the meetings. (Kang Decl., Ex. A at 112.) DeYoung thereafter revised PIP II to include additional performance issues ("PIP III"). (*Id.* at 115-18.)

Two weeks later, DeYoung recommended to her supervisor and Gail Baker in Human Resources that Plaintiff's employment be terminated due to performance issues. (Def.'s Separate Statement of Uncontroverted Facts in Supp. of Mot., Fact No. 94.) DeYoung's supervisor, Baker and Kevin McKenna, Vice-President of Human Resources, supported DeYoung's recommendation, and confirmed her request to terminate Plaintiff's employment. (*Id.*, Fact Nos. 95-96.)

A few days later, Plaintiff took a medical leave of absence. (*Id.*, Fact No. 97.) While she was on leave, Plaintiff sent a letter to Baker about how DeYoung was treating her. (*See* Decl. of Renita Bryant in Opp'n to Mot. ("Bryant Decl."), Ex. V.) In that letter, Plaintiff stated she felt DeYoung was "biased and she shows favoritism towards Lori which is disparate treatment." (*Id.*) Plaintiff also stated she felt she was "being discriminated against by Lindsay." (*Id.*)

/ / /

Plaintiff returned from medical leave on September 24, 2007, at which time she was terminated from her job. (Def.'s Separate Statement of Uncontroverted Facts in Supp. of Mot., Fact Nos. 103, 107.)

On July 30, 2008, Plaintiff filed the present case against Defendant in San Diego Superior Court. The Complaint alleges claims for discrimination, harassment, retaliation and failure to prevent same in violation of California Government Code § 12940, *et seq.*, intentional infliction of emotional distress, wrongful termination, breach of contract and breach of the covenant of good faith and fair dealing. Defendant removed the case to this Court on September 5, 2008. The present motion was filed on September 25, 2009, and submitted without oral argument on November 16, 2009.

## II.

## DISCUSSION

Defendant moves for summary judgment, or in the alternative, partial summary judgment. It asserts there are no genuine issues of material fact on any of Plaintiff's claims, and it is entitled to judgment as a matter of law. Plaintiff disputes that there are no genuine issues of material fact, and that Defendant is entitled to summary judgment.

**A.  Summary Judgment**

"Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005) (citing Fed. R. Civ. P. 56©)). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To meet this burden, the moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, then the burden shifts to the opposing party to show that summary judgment is not appropriate. *Id.* at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986). *See also IPXL*, 430 F.3d at 1380 (quoting *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998)) (stating "'evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent.'") However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.     Discrimination**

Plaintiff's first claim alleges Defendant discriminated against her based on her age and race in violation of California Government Code § 12940, *et seq.* This claim is governed by the "three-stage burden-shifting test established by the United States Supreme Court" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first stage, the plaintiff bears the burden to establish a "prima facie case of discrimination." *Guz v. Bechtel National Inc.*, 24 Cal. 4th 317, 354 (2000). Generally, the plaintiff can establish a prima facie case by providing evidence that:

> (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstances suggests discriminatory motive.

*Id.* at 355. The burden then "shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise [ ] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason." *Id.* at 355-56 (citations omitted). "If the employer sustains this burden, the presumption of discrimination disappears." *Id.* at 356. The burden then shifts back to the plaintiff "to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* (citations omitted).

Defendant's first argument in support of its motion for summary judgment on this claim focuses on the second element of the prima facie case: whether Plaintiff was qualified for her position as an Account Executive or was performing competently in that position. Defendant asserts Plaintiff

///

1 was not performing competently, but it fails to argue that she was unqualified for her position.
2 Accordingly, Defendant has not met its burden of proof on this element.

3 The next element in dispute is discriminatory motive. Defendant argues there is no evidence
4 of discriminatory motive based on age or race, therefore it is entitled to summary judgment on this
5 claim. Plaintiff disagrees. She points to DeYoung's comment to her that, "you've been here for a
6 long time. And sometimes it doesn't, it doesn't hurt to go and explore other, you know, avenues or
7 opportunities that's [sic] out there." (*See* Rosenstein Decl., Ex. DD at 65.) Plaintiff also relies on the
8 disparity between DeYoung's treatment of Plaintiff and Lori Meyer. (*See id.* at 94-97.) Notably,
9 Defendant does not dispute this evidence, and indeed, it fails to address the evidence that DeYoung
10 treated Meyer more favorably than Plaintiff. This evidence creates a genuine issue of material fact
11 on the issue of discriminatory motive. *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir.
12 1990) (stating employee may prove claim of unlawful discrimination with evidence that employees
13 of different races were treated differently in similar situations) (citations omitted). Accordingly,
14 Defendant is not entitled to summary judgment on the ground that there is no evidence to support
15 Plaintiff's prima facie case of discrimination.

16 Defendant asserts it has provided a legitimate, nondiscriminatory reason for terminating
17 Plaintiff's employment: Plaintiff failed to perform her sales duties to the satisfaction of her supervisor,
18 Ms. DeYoung. Plaintiff argues, however, that this reason is simply a pretext for discrimination.
19 Specifically, she asserts that Defendant's reason for terminating Plaintiff's employment keeps
20 changing. Plaintiff also contends the subjective nature of Defendant's proffered reason actually
21 supports an inference of discrimination.

22 As an initial matter, Defendant disputes that its reason for terminating Plaintiff's employment
23 has changed. It asserts the reason has always been Plaintiff's failure to demonstrate the sales skills
24 required by her supervisor. However, Defendant does not dispute that the required sales skills did
25 change between PIP I and PIP III. For instance, PIP I and PIP II state that Plaintiff:

26 [n]eeds to demonstrate the knowledge and skills to put all aspects of a sale together
including:
27
• Thorough evaluation of the opportunity to recommend correct product lines
28 • Demonstrate how to evaluate claims data and qualify the opportunity
• Understand how the opportunity will benefit our organization

1     •      Ability to follow through with entire sales process including implementation and ability to negotiate and complete a contract.

(Rosenstein Decl., Ex. A at 102-03, 105-06.) PIP III includes these performance issues, but also adds that Plaintiff:

    needs to demonstrate the following:

- Be able to conduct customer meetings on her own
  - Make sure she is meeting the right people (decision makers)
  - Present products that fit the customers needs and be able to speak to it
  - Represent yourself as a sales person not an account manager
  - Thoroughly research the customer before the meeting to anticipate their needs and ask the appropriate questions.
  - Need to control her body language when the conversation doesn't go in the direction she wants it to go.
- Improve time management skills
  - Confirm the meeting time and place with customer prior to travel.
  - Allow enough time between meeting and be conscious of the time to allow a smooth transition to the next meeting.
- Needs to request an accurate claims data file from the customer with the appropriate fields and not waste resources.
- Needs to be current and up to date on Sector changes and issues that could have an impact on the customer (claims repricing and provider matching criteria.)

(*Id.* at 115-16.) Thus, although the overarching reason for terminating Plaintiff's employment has not changed (failure to perform sales duties to the satisfaction of her supervisor), the sales duties at issue have changed. This change casts some doubt on Defendant's reason for terminating Plaintiff's employment. *See Farris v. Clinton*, 602 F.Supp.2d 74, 89 (D.D.C. 2009) ("Changes and inconsistencies in an employer's stated reasons for an adverse employment action can cast doubt on its asserted nondiscriminatory justification for the action.")

      Furthermore, Defendant does not dispute that the reason for terminating Plaintiff's employment is subjective, and that "'subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized.'" *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1136 (9th Cir. 1988)). When combined with the evidence of disparity between DeYoung's treatment of Plaintiff and Meyer, and the "revision" of the PIPs, Plaintiff has raised a genuine issue of material fact on the element of pretext sufficient to defeat Defendant's request for summary judgment on this claim.

/ / /

**C.     Harassment**

In the next claim, Plaintiff alleges Defendant subjected her to harassment because of her age and race. To prevail on this claim, Plaintiff "'must demonstrate that the conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions of employment and create a work environment that qualifies as hostile or abusive'" to Plaintiff because of her age and race. *Lyle v. Warner Bros. Television Productions*, 38 Cal. 4th 264, 278-79 (2006) (citations omitted). "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances." *Jones v. Dep't of Corrections and Rehabilitation*, 152 Cal. App. 4th 1367, 1378 (2007) (citations omitted). These include (1) the nature of the conduct, *Sheffield v. Los Angeles County Dep't of Social Services*, 109 Cal. App. 4th 153, 162 (2003), (2) the frequency of the conduct, *Jones*, 152 Cal. App. 4th at 1378, (3) the severity of the conduct, *id.*, (4) the length of the conduct, *Sheffield*, 109 Cal. App. 4th at 162, (5) whether the conduct is "physically threatening or humiliating, or a mere offensive utterance[,]" *Jones*, 152 Cal. App. 4th at 1378, (6) whether the conduct "unreasonably interferes with an employee's work performance[,]" *id.* and (7) the conduct's effect on the employee's psychological well-being. *Id.*

Genuine issues of material fact surrounding these circumstances remain. For instance, Defendant fails to address how DeYoung's status as Plaintiff's supervisor affected Plaintiff's work environment. Nor does Defendant address DeYoung's alleged favoritism of Meyer, or Plaintiff's medical leave due to stress she felt as a result of DeYoung's conduct. Considering the totality of the circumstances, Defendant has failed to establish that summary judgment on this claim is appropriate.[1]

**D.     Retaliation**

Next, Plaintiff alleges a claim of retaliation. "In order to make a prima facie showing of retaliation, the plaintiff must show that he engaged in a protected activity, that the employer subjected him to an adverse employment action, and that a causal link exists between the protected activity and the employer's action." *Villanueva v. City of Colton*, 160 Cal. App. 4th 1188, 1198-99 (2008) (citing *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002)). Defendant here asserts Plaintiff

---

[1] In light of this ruling, and the ruling on Plaintiff's discrimination claim, Defendant is not entitled to summary judgment on Plaintiff's wrongful termination claim.

1 does not have evidence of the first and third elements, therefore it is entitled to summary judgment
2 on this claim.

3 There is no dispute that Plaintiff sent a letter to Ms. Baker in Human Resources on September
4 14, 2007.  (*See* Bryant Decl., Ex. V.)  In that letter, Plaintiff complained that DeYoung "shows
5 favoritism towards Lori which is disparate treatment."  (*Id.*)  She also alleged that she was "being
6 discriminated against by Lindsey."  (*Id.*)  Although Plaintiff did not identify the specific basis for the
7 alleged discrimination, *i.e.*, race and age, her letter did allege she was being treated differently from
8 Meyer and that DeYoung was discriminating against her.  This evidence satisfies Plaintiff's burden
9 to show that she engaged in protected activity.

10 The only other issue is whether there is evidence of a causal link between this activity and the
11 termination of Plaintiff's employment.  Defendant asserts there is not, and provides evidence that the
12 decision to terminate Plaintiff's employment was made before Plaintiff sent the letter to Baker.  (*See*
13 DeYoung Decl. at ¶ 10.)  Plaintiff fails to cite any evidence that directly refutes this fact, and instead
14 relies on the temporal proximity of her letter to Baker dated September 14, 2007, and the termination
15 of her employment, which occurred on September 24, 2007.  Although the timing of these events may
16 raise an inference of a causal link in certain situations, *Villarimo v. Aloha Island Air, Inc*., 281 F.3d
17 1054, 1065 (9th Cir. 2002), that inference does not overcome Defendant's evidence that the decision
18 to terminate Plaintiff's employment was made before Plaintiff sent the letter to Baker.  *See Grosz v.*
19 *Boeing Co.*, 455 F.Supp.2d 1033, 1044 (C.D. Cal. 2006) (finding timing of claim and termination
20 insufficient evidence "from which a trier of fact could find a causal connection between" plaintiff's
21 complaint and termination); *Maurey v. Univ. of Southern Cal.*, 87 F.Supp.2d 1021, 1033 (C.D. Cal.
22 1999) (stating *in absence of direct evidence*, causal link may be established by temporal proximity
23 between protected activity and adverse employment decision).  Absent a genuine issue of material fact
24 on this element, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.[2]

25 / / /
26 / / /

27 ----

28 [2] In light of this ruling, Defendant is also entitled to summary judgment on Plaintiff's claim for failure to prevent retaliation.

**E.     Failure to Prevent Discrimination and Harassment**

Plaintiff's next claim alleges Defendant failed to prevent discrimination and harassment from occurring at the workplace.

> When a plaintiff seeks to recover damages based on a claim of failure to prevent discrimination or harassment she must show three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm.

*Leleind v. City and County of San Francisco*, 576 F.Supp.2d 1079, 1103 (N.D. Cal. 2008) (citing California Civil Jury Instructions (BAJI) 12.11). Here, Defendant asserts it is entitled to summary judgment on this claim because it established an EEO Policy and a Diversity Awareness Policy, both of which prohibited illegal discrimination and harassment. However, this assertion does not negate the first element of this claim, namely whether Plaintiff was subjected to discrimination and harassment. In light of the Court's ruling that there are genuine issues of material fact on those underlying claims, the Court denies Defendant's request for summary judgment on the present claim.

**F.     Intentional Infliction of Emotional Distress**

In her next claim, Plaintiff allege Defendant intentionally inflicted emotional distress upon her.

> "The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct."

*Berkley v. Dowds*, 152 Cal. App. 4th 518, 533 (2007) (quoting *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998)). Here, Defendant argues Plaintiff cannot establish its conduct was "extreme and outrageous." It also asserts this claim is barred by the exclusivity provisions of the Workers' Compensation Act.

Neither of these arguments warrants summary judgment. First, to the extent Plaintiff's intentional infliction of emotional distress claim is based on Defendant's acts of discrimination and harassment, that conduct "will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress[.]" *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 618 (1989). Second, an intentional infliction of emotional distress claim based on

1 discrimination and harassment is not barred by the Workers' Compensation Act. *See Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 480 (1992) (stating trial court erred in concluding claim of emotional distress arising from FEHA violation were barred by workers' compensation act). Accordingly, Defendant is not entitled to summary judgment on this claim.

**G.     Breach of Contract**

Plaintiff's next claim alleges Defendant breached its contract with Plaintiff. Specifically, Plaintiff alleges she had an implied-in-fact agreement with Defendant that she would not be terminated absent good cause. Defendant asserts it is entitled to summary judgment on this claim because there is no evidence to support Plaintiff's allegation of an implied-in-fact agreement. Even if there is evidence of such an agreement, Defendant argues it had good cause to terminate Plaintiff's employment.

Defendant has submitted evidence that it had a written agreement with Plaintiff specifying that her employment was "at-will." (*See* Kang Decl., Ex. A at 133.) Plaintiff disagrees with this evidence, but she fails to provide any evidence to support her disagreement. Instead, she relies on the following facts to support her claim of an implied-in-fact agreement: (1) her length of employment with Defendant and its predecessors (18 years), (2) her positive performance evaluations, (3) her sales awards for performance, and (4) assurances from her superiors of her continued employment. (Mem. in Opp'n to Mot. at 22-23.) However, none of these facts is sufficient to overcome the express written agreement between Plaintiff and Defendant. *See Starzynski v. Capital Public Radio, Inc.*, 88 Cal. App. 4th 33, 37-38 (2001) (declining to find implied-in-fact agreement in the face of express written agreement that employment was at-will); *Halvorsen v. Aramark Uniform Services, Inc.*, 65 Cal. App. 4th 1383, 1288-89 (1998) (finding plaintiff's "employment was at-will under the terms of the contract and an implied-in-fact promise not to terminate except for good cause cannot contradict the contractual at-will provision.") Furthermore, Plaintiff has failed to provide any evidence of a written agreement signed by Defendant's "Chief Executive Officer or his designee," as is required to modify her at-will

/ / /

/ / /

1  ///

2  ///

3  status. (*See* Kang Decl., Ex. A at 178.) Therefore, Defendant is entitled to summary judgment on

4  Plaintiff's breach of contract claim.[3]

**H.    Punitive Damages**

Finally, Defendant asserts Plaintiff is not entitled to recover punitive damages because she has failed to present clear and convincing evidence of oppression, fraud or malice. Defendant's assertion, however, does not satisfy its burden on summary judgment. Accordingly, Defendant's request for summary judgment on this aspect of Plaintiff's case is denied.

## III.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's motion for summary judgment. Specifically, the Court grants Defendant's motion as to Plaintiff's claims for retaliation, failure to prevent retaliation, breach of contract and breach of the covenant of good faith and fair dealing. As to Plaintiff's remaining claims, Defendant's motion is denied.

**IT IS SO ORDERED**.

DATED: December 17, 2009

HON. DANA M. SABRAW
United States District Judge

---

[3] In the absence of an implied-in-fact agreement that Plaintiff would not be terminated absent good cause, Defendant is also entitled to summary judgment on Plaintiff's bad faith claim. *See Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) ("There is no obligation to deal fairly or in good faith absent an existing contract.")